El PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ESTEBAN PÉREZ, acusado y apelante.

No. 3056.—*Visto:* Abril 22, 1927. *Resuelto:* Mayo 6, 1927.

HOMICIDIO *(Homicide)*—EVIDENCIA—ADMISIBILIDAD EN GENERAL—PRUEBA—SOBRE DEFENSA PROPIA—ACTOS ESPECÍFICOS DE MALA CONDUCTA DEL INTERFECTO—EN GENERAL.—Cuando un acusado declara sin oposición contraria sobre actos específicos del interfecto para explicar los fundamentos de la creencia que tenía él de sufrir grave daño corporal en el momento en que fué atacado por aquél la eliminación posterior de tal prueba del récord, es un error reversible.

SENTENCIA de *Tomás Bryan*, J. (Aguadilla), condenando al acusado por delito de homicidio voluntario. *Revocada.*

*Buenaventura Esteves,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El apelante fué sentenciado por el delito de homicidio voluntario en virtud de una acusación por dicho delito.

Esteban Pérez era un mayordomo de finca rústica, quien admitió el hecho de la muerte y alegaba haber actuado en defensa propia. El interfecto era un bracero agrícola llamado Carlos Rodríguez, que vivía en la finca. El acusado recibió varias heridas producidas aparentemente por Rodríguez con un garrote, recibidas, según dice el acusado, antes de hacer el disparo que produjo la muerte a Rodríguez. Hubo prueba tendiente a demostrar que Rodríguez gozaba de mala reputación como persona de carácter peligroso y que el acusado tenía conocimiento de su reputación. Un testigo que llegó a la escena del suceso pocos minutos después de los disparos, manifestó que Rodríguez había dicho que había salido de su casa dispuesto a matar al acusado, pero que éste avanzó más que él. Rodríguez era un hombre robusto y más fuerte que el acusado.

El apelante era un hombre como de sesenta años de edad en la época del juicio, que nunca había sido acusado de delito alguno. El declaró que Rodríguez llegó a la finca al ser despedido por los Echeandía, dueños de una plantación vecina; que Rodríguez insistió en que cuando más joven había gozado de mala reputación pero que su mal genio era cosa del pasado; que él le había dicho a Rodríguez que si venía a vivir a la finca tenía que obedecer las órdenes y evitar disgustos; que Rodríguez estuvo conforme con estas condiciones y él le dió empleo porque era honrado, industrioso y un buen hombre de trabajo; que siempre había tratado a Rodríguez con más consideración que a cualquiera

otro de los empleados porque sabía que era un hombre peligroso y que hasta el día de la pelea que resultó en la muerte de Rodríguez no había disgusto alguno; que él no huyó cuando Rodríguez se le fué encima porque le habían dicho que si huía, Rodríguez lo perseguiría hasta su casa y se metería en cualquiera habitación que él entrara; que Rodríguez se le había armado a don Pedro Jaunarena en Guajataca, había cogido un cuchillo y lo había atacado; que se le impuso en dos o tres ocasiones a don Cecilio Echeandía, quien se había visto obligado a mandar a buscar a don Pedrito; que muchos individuos que eran gente floja le habían dicho que Rodríguez era un hombre peligroso; que el día que tuviera un disgusto con él tendría que abandonar la finca y dejársela a Rodríguez; que Rodríguez era un matón; que un día mientras estaba de visita en casa del Sr. Laurnaga, don Pedro le dijo que Rodríguez era un hombre muy peligroso; que una vez en Guajataca si no hubiese sido porque Laurnaga estaba al lado de una mesa grande y de un mostrador, Rodríguez le hubiese asesinado; que Rodríguez había sacado un puñal y lo había salvado la Providencia y la llegada a tiempo de varias personas.

Entonces ocupó la silla de los testigos Cecilio Echeandía, quien declaró acerca de la mala reputación de Rodríguez. En el examen de repreguntas el fiscal de distrito logró que este testigo informara que hacía más de diez años que conocía a Rodríguez y que unos cuatro años antes del juicio Rodríguez se había salido de la finca de él y se había ido a vivir a la finca de un hermano del testigo llamado Pedrito. El juez entonces hizo varias preguntas referentes a las mismas cuestiones ya cubiertas por el fiscal. Después de esto el fiscal le preguntó al testigo si le había seguido la pista a Rodríguez y si lo había observado constantemente después de haberse mudado para la finca de Pedrito. Luego de contestar afirmativamente, el testigo agregó que Rodrí-

guez, después dejó la finca "Entente," perteneciente a la
Sucesión Oronoz, y que salió de allí por cuestión de un so-
brino suyo. Entonces el fiscal le dijo al testigo que limi-
tara su declaración a la reputación del interfecto. El abo-
gado de la defensa dijo que la respuesta era pertinente. El
juez manifestó que el testigo podía continuar declarando.
El fiscal entonces dijo que no se trataba de ninguna cues-
tión de corroboración; que el testigo no había declarado
nada de eso, que no había mencionado este incidente. La
corte resolvió que en respuesta a preguntas referentes a la
reputación general hechas por un fiscal, el testigo no podía
referirse a actos específicos. El abogado tomó excepción
por el fundamento de que el acusado había declarado sobre
tales actos para explicar los fundamentos de la creencia
que tenía él de sufrir grave daño corporal en el momento
en que fué atacado por Rodríguez.

La transcripción taquigráfica de lo que sucedió después
dice así:

"Fiscal: Mi contención es la siguiente: que no puede declarar
sobre hechos específicos, el señor dice que no es otra cosa que un tes-
tigo de corroboración, pero el acusado al referirse a esos actos, dijo
que se lo dijeron y pido la eliminación de eso, por ser de referencia.
Eliminándose eso, no hay nada que corroborar.

"Juez: La corte ordena la eliminación de la declaración del
acusado, en cuanto a lo que ha declarado sobre hechos específicos
de Fulano de Tal, Perencejo y Zutano.

"Abog.: Tomamos excepción por entender que la resolución de
la corte lesiona los derechos del acusado."

El fiscal de esta corte admite que se cometió error a este
respecto, pero alega que el acusado no pudo ser perjudicado
porque la resolución de la corte de que ahora se queja el
apelante no pudo borrar de la mente de los señores del ju-
rado el efecto producido en ellos por la declaración del
acusado.

No podemos estar de acuerdo con este punto de vista.
El jurado había prestado juramento de juzgar el caso de

acuerdo con la ley, según le fuera expuesta por la corte, y únicamente por la prueba propiamente sometídale. · Es cierto que no hay presunción de que el jurado decidiría o decidió el caso fundándose en hechos y circunstancias que fueron expresamente excluídos de su consideración por el juez de la corte inferior.

*La sentencia apelada debe ser revocada.*